Charles McFADDEN, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted Aug. 8, 2002.

Decided Sept. 5, 2002.

Charles McFadden, petitioner, pro se.

Kelly K. Smith, Harrisburg, for respondent.

Before SMITH–RIBNER, Judge, and SIMPSON, Judge and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Charles F. McFadden (Claimant) petitions for review *pro se* from an order of the Unemployment Compensation Board of Review (Board) which affirmed the decision of an unemployment compensation referee (referee) denying benefits. We affirm.

Claimant was employed as a salaried manager by Lucent Technologies (Employer) until his last day of work on May 16, 2000. Claimant accepted a severance package from Employer as part of a reduction in force program in lieu of participating in a skills assessment program for possible continuing employment. Claimant filed an application for unemployment compensation benefits. Although the Allentown UC Service Center (UC Center) determined that Claimant was eligible for benefits, the UC Center reduced Claimant's benefits to a point of elimination pur-

suant to Section 404(d)(2) of the Unemployment Compensation Law (Law).[1] By notice mailed June 26, 2001, the UC Center informed Claimant that his weekly benefit rate of $430 was reduced by $430 per week, which was listed as the prorated weekly amount for his pension benefit from Employer, resulting in an adjusted weekly benefit rate of $0. On June 30, 2001, Claimant appealed the UC Center's Notice of Determination and the matter was heard before a referee. The referee affirmed the determination of the UC Center. Claimant then appealed the referee's decision to the Board.

Based upon the testimony and evidence presented by Claimant,[2] the Board issued the following findings of fact. Claimant filed an application for benefits effective May 27, 2001 and is entitled to receive benefits in the amount of $430 per week. Claimant receives a monthly pension of $3,650.73. Claimant's pension is based upon services performed by a base year and/or chargeable employer. Claimant did not contribute to the pension plan. Claimant's monthly pension is equivalent to a weekly sum of $842.48. Claimant's earnings during his base year increased the amount of his pension by at least one dollar per month. Approximately two years prior to the Claimant's retirement, Employer modified its pension system and implemented formula changes in calculating the premium that retirees pay for a survivor benefit annuity. Employer's plan makes the survivor annuity benefit mandatory for married retirees unless the spouse signs a written waiver. The cost of the annuity is deducted from Claimant's pension. In the event that Claimant survives his spouse, his pension amount would then be increased by the same reduction factor, as no annuity would then be payable.

Based upon these findings, the Board concluded that Claimant's pension benefits are deductible from Claimant's weekly benefit rate. Since 100 percent of Claimant's prorated pension and social security benefits exceed his weekly benefit rate of $430, Claimant's weekly unemployment compensation benefits are totally offset. By order dated February 21, 2002, the Board affirmed the order of the referee and denied benefits.

Claimant now petitions for review with this Court. Claimant presents the following issues for our review:

1. Whether Claimant got a fair, impartial and objective hearing.

2. Whether the Board erred by rejecting the testimony and evidence offered by Claimant.

3. Whether the survivor annuity benefit cost reduction to Claimant's monthly pension operates to make his pension payment non-deductible from unemployment compensation benefits under the Law.

4. Whether the deduction of Claimant's pension annuity payments from unemployment compensation benefits violate the due process aspects of our judicial system.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 804(d)(2). Section 404(d)(2)(i) provides that for any week in which an individual is receiving a pension, "the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the pro-rated weekly amount of the pension as determined under subclause (ii)." Section 404(d)(2)(ii) provides that if the pension is entirely contributed to by the employer, then 100 percent of the pro-rated weekly amount of the pension shall be deducted; if the pension is contributed to by the individual, then only 50 percent of the pro-rated weekly amount shall be deducted.

2. Employer did not participate in the proceedings.

■ Claimant contends that he was denied a fair, impartial and objective hearing. We disagree.

■ It is well settled that the essential elements of due process in an administrative proceeding are notice and an opportunity to be heard. *Groch v. Unemployment Compensation Board of Review*, 81 Pa.Cmwlth. 26, 472 A.2d 286 (1984); *Wojciechowski v. Unemployment Compensation Board of Review*, 47 Pa. Cmwlth. 116, 407 A.2d 142 (1979). In the context of a proceeding before the Board, these elements encompass the right to request oral argument, the granting of which is discretionary, and to file a brief. *Sacks v. Unemployment Compensation Board of Review*, 59 Pa. Cmwlth. 208, 429 A.2d 136 (1981). An unrepresented claimant is entitled to assistance from the factfinder in the development of his case. *Groch; Bennett v. Unemployment Compensation Board of Review*, 66 Pa.Cmwlth. 455, 445 A.2d 258 (1982). "Where a party is not represented by counsel the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties." 34 Pa.Code § 101.21. However, the referee is not required to become and should not assume the role of a claimant's advocate. *Brennan v. Unemployment Compensation Board of Review*, 87 Pa.Cmwlth. 265, 487 A.2d 73 (1985).

In the case at bar, a review of the record reveals that Claimant was provided notice and was advised of his rights. The hearing notice mailed to Claimant delineated his rights, including his right to subpoena witnesses. Claimant was also advised of his rights by the referee. Claimant was afforded the opportunity to be heard throughout the proceeding. Claimant testified on his own behalf and was questioned by the referee regarding his pension.

With regard to Claimant's assertions that the referee accepted testimony from Employer *ex parte*, we can find nothing in the record to support this allegation. Rather, the record shows that the referee scheduled another hearing and requested that Employer participate. However, upon notification that Employer would not participate, this hearing was not held. Employer's letter to the referee regarding its nonparticipation merely informed the referee that its pension is 100 percent employer funded—a fact which Claimant does not dispute. Based upon our review of the record, Claimant was afforded the process he was due and received a fair, impartial hearing.

■ Next, Claimant contends that the Board erred by rejecting the testimony and evidence offered by Claimant and that the Board's finding that "claimant's earnings during his base year increased the amount of his pension by at least one dollar per month" is not supported by the evidence. We disagree.

In unemployment compensation proceedings, the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). The Board is free to accept or reject the testimony of any witness in whole or in part. *Keystone Coca–Cola Bottling Corp. v. Unemployment Compensation Board of Review*, 693 A.2d 637 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 553 Pa. 684, 717 A.2d 535 (1998), *cert. denied*, 525 U.S. 876, 119 S.Ct. 177, 142 L.Ed.2d 145 (1998); *Greif v. Unemploy-*

*ment Compensation Board of Review*, 68 Pa.Cmwlth. 437, 450 A.2d 229 (1982).

■ Where, as here, the party with the burden of proof did not prevail below, our scope of review is limited to a determination of whether or not the findings of fact were consistent with each other, with the conclusions of law, with the order, and can be sustained without a capricious disregard of competent evidence. *Gehouskey v. Unemployment Compensation Board of Review*, 59 Pa.Cmwlth. 476, 429 A.2d 1280 (1981). A capricious disregard of competent evidence constitutes disbelief of testimony which someone of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth. *Galla v. Unemployment Compensation Board of Review*, 62 Pa.Cmwlth. 238, 435 A.2d 1344 (1981); *Davis v. Unemployment Compensation Board of Review*, 57 Pa.Cmwlth. 499, 426 A.2d 753 (1981).

In the case before us, the Board found that Claimant's earnings during his base year increased the amount of his pension by at least one dollar per month. This finding is based upon Claimant's Retirement and Pension Information and a June 2, 2001 letter to the Department of Labor and Industry regarding the same. Therein, Claimant stated that he worked for Employer during the year 2000 from January 1, 2000 to May 12, 2000. Claimant stated that this employment did not affect his pension eligibility and that he was entitled to a pension in the amount of $3,650 per month at the start of the year 2000 based upon service. In response to the query, "Did the work during 2000 increase the amount of the pension," Claimant responded *"Yes But* my pension is about one dollar more per month because of this employment. ($3650 to $3651)." June 2, 2001 Letter (emphasis provided). Although Claimant recanted these state-

ments in his testimony and testified that his pension did not increase, the Board did not credit this testimony. As the Board noted, the evidence submitted by Claimant showed that his regular pension amount consistently increased with additional periods of service. Based upon our review of the record, we conclude that the Board did not capriciously disregard competent evidence in finding that Claimant's earnings during his base year increased the amount of his pension.

■ Claimant further contends that the survivor annuity benefit cost reduction to Claimant's monthly pension operates to make his pension payment non-deductible from unemployment compensation benefits under the Law. We disagree.

Section 404(d)(2)(i) of the Law, 43 P.S. § 804(d)(2)(i), provides that "[F]or any week with respect to which an individual is receiving a pension ... under a plan maintained or contributed to by ... [an] employer, the weekly benefit amount payable to such individual for such week shall be reduced, but not below zero, by the prorated weekly amount of the pension as determined under subclause (ii)." Subsection (ii) provides that "[i]f the pension is entirely contributed to by the employer, then one hundred per centum (100%) of the pro-rated weekly amount of the pension shall be deducted." Section 404(d)(2)(ii) of the Law. However, "[n]o deduction shall be made under this clause by reason of the receipt of a pension if the services performed by the individual during the base period or remuneration received for such services for such employer did not affect the individual's eligibility for, *or increase the amount of,* such pension...." Section 404(d)(2)(iii) of the Law (emphasis added).

Herein, Claimant contends that his pension is not deductible because the amount of his pension decreased as a result of his

base year earnings. Our review of the record reveals that Claimant's pension did not decrease. Rather, the cost of a survivor's annuity benefit, which is deducted from his pension, increased.[3] We can find no support for the proposition that only the "net" amount of Claimant's pension is deductible for purposes of unemployment compensation. We, therefore, conclude the Board did not err in concluding that the gross amount of Claimant's pension payments, before the deduction for the survivor's annuity benefit, was subject to the offset provisions of Section 404(d)(2) of the Law.

■ Lastly, Claimant contends that the deduction of his pension annuity payments from unemployment compensation benefits violates the due process aspects of our judicial system. We disagree.

■ There is a strong presumption in favor of the constitutionality of an act of the General Assembly. *Latella v. Unemployment Compensation Board of Review*, 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983). The burden lies heavily upon the party challenging the act to show that it clearly, plainly and palpably violates the Constitution. *Id.; Wallace v. Unemployment Compensation Board of Review*, 38 Pa. Cmwlth. 342, 393 A.2d 43 (1978). "[E]very presumption must be indulged in favor of the constitutionality of a statute and the burden is heavy upon one who challenges it." *Gilman v. Unemployment Compensation Board of Review*, 28 Pa.Cmwlth. 630, 369 A.2d 895, 897 (1977). As our Supreme Court has held:

> Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.

*Martin v. Unemployment Compensation Board of Review*, 502 Pa. 282, 293, 466 A.2d 107, 112 (1983), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 541 (1984). The test for substantive due process in the areas of social and economic legislation, including unemployment compensation laws, is whether the challenged law has a rational relation to a valid state objective. *Lacks v. Unemployment Compensation Board of Review*, 164 Pa.Cmwlth. 215, 642 A.2d 603 (1994); *Novak v. Unemployment Compensation Board of Review*, 73 Pa. Cmwlth. 148, 457 A.2d 610 (1983).

The section at issue herein is subsection (iii) of Section 404(d)(2), which provides:

> "[n]o deduction shall be made under this clause by reason of the receipt of a pension if the services performed by the individual during the base period or remuneration received for such services for such employer did not affect the individual's eligibility for, or increase the amount of, such pension. . . ."

43 P.S. § 804(d)(2)(iii). As this section creates economic classifications, we need only determine whether this section is rationally related to a legitimate governmental objective.

This Court has previously considered the constitutionality of the pension offset provisions of Section 404(d)(2) of the Law and has rejected similar due process challenges. *Lacks; Latella; Novak.* In *Latella*, the claimants had their unemployment benefits reduced by 100% of the amount of their pension benefits pursuant

---

**3.** With the survivor's annuity benefit, Claimant is paying for the benefit of having his pension continue if he predeceases his wife. As the cost of the annuity is actuarially based, it increases with Claimant's age.

to former Section 404(d)(iii) of the Law, which mandated the deduction of 100% of a claimant's pension income.[4] The *Latella* claimants argued that former Section 404(d)(iii) of the Law violated both the state and federal Equal Protection Claus-. es, because that Section mandated the de-. duction of pension income, but not alternative income such as royalties, dividends, etc. This Court recognized that pension offset provisions of former Section 404(d)(iii) of the Law "rationally advance two legitimate government objectives: (1). the promotion of the fiscal integrity of the unemployment compensation fund; and (2) to elimination of the duplicative 'windfall' benefits to those who, primarily because of their retirement eligibility, are receiving adequate wage replacement income and thus experiencing greater economic security than those less fortunate." *Latella,* 459 A.2d at 468–469 (citations omitted). We explained:

> The Legislature, by disqualifying certain forms of wage replacement income, has made a reasonable determination that those with outside income have a reduced need for governmental assistance during a period of unemployment. If an individual, though unemployed, is provided with equivalent wage replacement income, the purpose of the statute is fulfilled in that the worker is not made indigent; the social evils the statute was designed to obviate (economic insecurity and indigency) are prevented.

*Latella,* 459 A.2d at 469.

In *Novak,* this Court held that the offset provision of Section 404(d) bears a rational relation to the stated objectives of the Law. We explained, "[o]ff-setting a per-

son's entitlement to benefits by amounts received through pensions preserves the unemployment funds for those people whose only hope of relief from sudden unemployment rests upon the funds maintained by the unemployment compensation reserves." *Id.* at 612.

In *Lacks,* this Court held that the offset provisions of Section 404(d)(2), providing for reduction of unemployment compensation benefits by 50 percent if the claimant contributed to his pension and by 100 percent if the pension is entirely contributed to by employer, did not violate state or federal equal protection provisions, despite contention that statute mandated deduction of certain pension income, but not widow's benefits or other alternative income. We concluded that the statute was rationally related to legitimate government objective of promoting fiscal integrity of unemployment compensation fund and eliminating duplicative benefits.

Similar to the claimants in *Latella, Novak,* and *Lacks,* Claimant here contends the Law is unconstitutional because it draws an irrational distinction between pension income and other sources of income. This Court has held that "[i]f the classification has some reasonable basis, then it does not offend the Constitution simply because it is not made with mathematical nicety or because, in practice, it results in some inequality." *Kroh v. Unemployment Compensation Board of Review,* 711 A.2d 1093, 1095 (Pa.Cmwlth. 1998) (citations omitted). "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievements of the State's

---

**4.** Section 404(d) of the Law was amended in 1988. Essentially, former clause (iii) of Section 404(d), which was at issue in *Latella,* reduced a claimant's unemployment benefits by 100% of their social security benefits, regardless of whether they had contributed to

their social security benefits or not, which was a harsher remedy than that imposed by the present subsection (2). The present subsection (2) deducts only 50% of the claimant's pension income where the claimant contributed to that pension in any amount.

objective." *Id.* As with the other offset pension provisions contained within Section 404(d)(2), subsection (iii) preserves the fiscal integrity of the unemployment compensation fund and eliminates duplicative benefits. We, therefore, conclude that Section 404(d)(2)(iii) is rationally related to a legitimate governmental objective and does not violate state or federal due process guarantees.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this *5th* day of *September,* 2002, the order of the Unemployment Compensation Board of Review, dated February 21, 2002, at Appeal No. B–01–09–B–2201, is affirmed.