IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason S. Roberts,                          :
                  Petitioner      :
                                 :
        v.                                 :
                                 :
Unemployment Compensation                  :
Board of Review,                           :   No. 851 C.D. 2020
                  Respondent     :   Submitted: March 8, 2024

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: May 20, 2024


Jason S. Roberts (Claimant) petitions, *pro se*, for review from the August 5, 2020 order of the Unemployment Compensation Board of Review (Board), which affirmed the decision of an Unemployment Compensation referee (Referee) finding Claimant ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law),[1] which provides that a claimant shall be ineligible for benefits in any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.[2] Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

[2] The Department of Labor and Industry's (Department) Service Center also determined that Claimant received $3,006.00 in non-fault overpayments under Section 804(b) of the Law, which determination was affirmed by the Referee and Board. Claimant does not challenge the Department's overpayment determination in the instant appeal.

## I. Background

Claimant was employed fulltime as a merchandising service manager for Lowe's Home Improvement (Employer) from February 2010 through January 3, 2020. *See* Referee's Decision/Order mailed June 24, 2020 (Referee's Decision) at 1 (pagination supplied), Finding of Fact[3] (F.F.) 1; Certified Record (C.R.) at 26. During the time he was so employed, Claimant lived in an apartment that was infested with mold, which Claimant alleged caused him to have health problems, including sleeping and breathing issues. *See* Referee's Decision at 1, F.F. 2; C.R. at 26. On December 20, 2019, Claimant purchased a home located two hours from his jobsite with Employer. *See* Referee's Decision at 1, F.F. 3; C.R. at 26. Also on December 20, 2019, Claimant submitted a two-week notification of his resignation from Employer, informing Employer that his last day would be January 3, 2020. *See* Referee's Decision at 1-2, F.F. 4; C.R. at 26. Claimant's two-week notification was very generic; he did not inform Employer of the conditions at his then-residence, nor did he inform Employer of any health reasons behind his resignation. *See* Board Order mailed August 5, 2020 (Board Order), F.F. 9;[4] C.R. at 3. Claimant made no request to Employer for a transfer to a location closer to his new home. *See* Referee's Decision at 2, F.F. 5; C.R. at 27. Continuing work was available with Employer at the time Claimant voluntarily separated from Employer. *See* Referee's Decision at 2, F.F. 6-7; C.R. at 27.

---

[3] The Board adopted and incorporated the Referee's findings of fact and conclusions of law in its order affirming the Referee's Decision. *See* Board Order mailed August 5, 2020 (Board Order); Certified Record (C.R.) at 33.

[4] In addition to the adopted findings of fact from the Referee's Decision, the Board added a single finding of fact relating to the generic nature of Claimant's two-week notification of resignation to Employer. *See* Board Order, F.F. 9; C.R. at 33.

Thereafter, Claimant applied for Unemployment Compensation (UC) benefits. The Department of Labor and Industry (Department) service center determined that Claimant had voluntarily quit his job with Employer without a necessitous and compelling reason and, therefore, denied Claimant UC benefits pursuant to Section 402(b) of the Law. *See* Notice of Determination mailed May 18, 2020 at 1; C.R. at 3. Claimant appealed the Department's determination to the Referee, who conducted a hearing and denied Claimant's appeal pursuant to Section 402(b) of the Law. *See* Notes of Testimony, June 22, 2020 (N.T.); C.R. at 10-24; *see also* Referee's Decision at 1-3; C.R. at 26-28. Claimant appealed to the Board, which affirmed the Referee's Decision by order mailed August 5, 2020. *See* Board Order; C.R. at 33. Claimant then petitioned this Court for review.[5]

## II. Issues

On appeal, Claimant contends that the Board erred in affirming the Referee's determination that Claimant was ineligible for UC benefits under Section 402(b) of the Law. *See* Claimant's Br. at 13, 22-49. Claimant argues that the record evidence illustrates that he had a necessitous and compelling reason to quit his employment and that the Referee's findings and determination to the contrary were occasioned by the Referee's failure to carry out his duty to provide due process by adequately aiding Claimant in soliciting facts that would have proven his claim.[6]

---

[5] This Court's review is limited to a determination of whether substantial evidence supported necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[6] Claimant states the questions involved in this matter as follows:

> 1. Did the [R]eferee breach his duties set forth by section 34 Pa. Code 101.21, deny [C]laimant his rights to due process and a full

## III. Discussion

### A. *Claimant's Ineligibility under Section 402(b) of the Law*

Initially, we note that

the Board, not the referee, is the ultimate fact[-]finding body and arbiter of credibility in UC cases. Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the Board and are not subject to re-evaluation on judicial review. The Board . . . may reject even uncontradicted testimony if it is deemed not credible

---

and fair hearing, and, make arbitrary determinations, by not aiding a *pro se* claimant, adequately in all ways consistent with the law?

2. Did the [Board] breach [its] duties set forth by section 34 Pa. Code 101.21, deny [C]laimant his rights to due process and a full and fair hearing, make arbitrary findings and determinations not supported by substantial evidence, exhibit bias to [C]laimant while favoring [E]mployer in regards [sic] to the weight of evidence determined credible, and err when applying the medical law to the claim, in addition to err [sic] in applying the law that governs considering additional material evidence submitted after the hearing.

Claimant's Br. at 13. The Board restated the claims involved herein as follows:

I. Did Claimant's testimony, as well as Employer's testimony, constitute substantial evidence to support the Board's finding that Claimant did not inform Employer of any health problems prior to resigning?

II. Did Claimant fail to prove a necessitous and compelling reason to quit when he voluntarily moved two hours from his jobsite and did not attempt to secure a transfer to a closer jobsite?

III. Did the Referee provide adequate due process to Claimant, as the Referee advised Claimant of his rights and attempted to solicit facts that would be beneficial to Claimant's argument?

Board's Br. at 1.

4

or worthy of belief. We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1227-28 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted).

Section 402(b) of the Law provides that an employee will be ineligible for UC benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. § 802(b). An employee voluntarily terminates employment when he resigns, leaves, or quits the employment without action by the employer. *Roberts v. Unemployment Comp. Bd. of Rev.*, 432 A.2d 646, 648 (Pa. Cmwlth. 1981). However, a claimant who voluntarily quits his employment may still be eligible for UC benefits if he voluntarily quits for cause of a necessitous and compelling nature. *See* 43 P.S. § 802(b). "Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review." *Hohl v. Unemployment Comp. Bd. of Rev.*, 261 A.3d 622, 627 (Pa. Cmwlth. 2021). "A claimant who voluntarily quits his employment bears the burden of proving that necessitous and compelling reasons motivated that decision." *Id.* (citation and internal quotation marks omitted); *see also Solar Innovations, Inc. v. Unemployment Comp. Bd. of Rev.*, 38 A.3d 1051, 1056 (Pa. Cmwlth. 2012) ("A claimant who voluntarily terminates his employment has the burden of proving that a necessitous and compelling cause existed."). Claimants who assert that they have left their employment for a necessitous and compelling reason must prove: "(1) the existence of circumstances that created real and substantial pressure to leave employment; (2) that such circumstances would compel a reasonable person to leave employment; (3) that he acted with ordinary common sense; and (4) that he made a

5

reasonable attempt to continue his employment." *Hohl*, 261 A.3d at 627; *see also Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Rev.*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). "Where the claimant has failed to take all necessary and reasonable steps to preserve the employment relationship, he cannot demonstrate a necessitous and compelling reason for leaving his job and is ineligible for benefits." *Id.* Additionally, this Court has determined that, where a claimant terminates employment while continuing work is available to relocate because the claimant feels unable to meet living expenses at their current location, relocation without prospects of future employment amounts to personal preference in favor of living in the new location and not a reason of a necessitous and compelling nature. *See Rose v. Unemployment Comp. Bd. of Rev.*, 398 A.2d 749, 750-51 (Pa. Cmwlth. 1979); *see also Day v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1027 C.D. 2010, filed February 1, 2011),[7] slip opinion at 3 (finding that a claimant who relocated based on his worsened financial situation without making any effort to preserve current employment and without arrangements for work in new location failed to prove a necessitous and compelling reason for leaving employment).

As the prevailing party below, Employer is entitled to the benefit of all reasonable inferences drawn from the evidence on review. *See Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

The evidence adduced at the Referee's hearing in this matter reveals that Claimant left his job with Employer for personal reasons without making reasonable efforts to preserve his employment. *See* N.T. at 4-12; C.R. at 14-22.

---

[7] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

6

Claimant testified on his own behalf before the Referee. *See* N.T. at 5-11; C.R. at 15-21. Claimant testified that he provided Employer with his two-week notice on December 20, 2019, and that the last day of his full-time employment as a Merchandising Service Manager was January 3, 2020. *See* N.T. at 5-6; C.R. at 15-16. As the reason for his separation from Employer, Claimant explained as follows:

> Well, I quit for reasons – personal reasons, which was what I sent that supplemental documentation for the appeal. Basically, my environment that I was living in was unhealthy. I looked for rentals around that area and they were out of my budget. So, basically, I decided to purchase a home, I found one, you know, two plus hours away that I could afford. So, basically, I had to relocate for health reasons. And, you know, I had to find something that I could actually afford.

N.T. at 6; C.R. at 16. Claimant testified that he had been looking for at least nine months to find suitable housing he could afford closer to his work, but that he had not been able to locate anything he could afford to either buy or rent in the area. *See* N.T. at 8-9; C.R. at 18-19.

Claimant did not cite his health reasons when explaining his resignation to Employer. *See* N.T. at 6; C.R. at 16. Instead, Claimant simply told Employer that he was resigning because had purchased a home outside of the area and was relocating. *See* N.T. at 6; C.R. at 16. Claimant also explained that he did not request that Employer transfer him to a location closer to his new home before he purchased the home and relocated. *See* N.T. at 6-8; C.R. at 16-18. Further, Claimant testified that he did not have employment lined up in the area of his newly purchased home at the time he quit his job with Employer. *See* N.T. at 9; C.R. at 19.

Additionally, although Claimant testified that the health issue he had been having that prompted his decision to purchase a house and move two hours from the location of his job stemmed from mold issues where he lived when working for Employer, he provided neither mold testing that confirmed his claims nor medical documentation that connected his alleged health issues to the suspected mold. *See* N.T. at 9-11; C.R. at 19-21.

Brian Seymour, Employer's District Merchandising Service Manager, testified before the Referee on Employer's behalf. *See* N.T. at 11-12; C.R. at 21-22. Seymour confirmed that Claimant notified Employer of his voluntary resignation and provided two weeks' notice via email in the end of December 2019. *See* N.T. at 12; C.R. at 22. Seymour explained that Claimant's two-week notice had been very generic, simply indicating that Claimant intended to voluntarily resign in the beginning of January 2020. *See id.* Seymour also testified that Claimant did not ask for any accommodations in relation to his resignation nor did he ask to be allowed to transfer to a location closer to his new residence. *See id.* Seymour further explained that Employer had continuing work available for Claimant at the time Claimant resigned. *See id.*

Based on this testimony, the Referee made the following determinations:

> In the present case, the Referee finds [C]laimant's testimony credible on the effect the mold in his apartment had on his health and his need to find a new place to live. [C]laimant further testified that he spent nine months looking for housing in the area where he lived and was allegedly unable to find anything suitable. However, the Referee did not find [C]laimant's testimony that he made a good faith effort to find suitable housing closer to [E]mployer to be credible. Additionally, the Referee

8

> concludes that [C]laimant's decision to purchase a home two hours away from [E]mployer amounts to a personal choice. In the hearing, [C]laimant testified that he did not ask [E]mployer about transferring to a location closer to the home he purchased in an effort to preserve his employment. As such, the Referee cannot find that [C]laimant has established a necessitous and compelling reason for leaving employment at the time [C]laimant did or [C]laimant acted with ordinary common sense and made a good faith effort to preserve the employment. Accordingly, benefits must be denied under Section 402(b) of the [] Law.

Referee's Decision at 3; C.R. at 028. The Board adopted the Referee's conclusions as its own. *See* Board Order; C.R. at 33; *see also* note 3, *supra*.

Based on the record in this case taken as a whole, we conclude that substantial evidence existed to support the Board's necessary findings of fact that Claimant voluntarily resigned his employment and failed to meet his burden of proving that he left work for cause of a necessitous and compelling nature. *See* Referee's Decision at 3; C.R. at 28; Board Order; C.R. at 33. We are bound by these findings. *See Waverly Height*s, 173 A.3d at 1228. Because Claimant failed to communicate his issues and concerns – either about his health or his financial situation – to Employer at any time prior to his resignation, failed to request a transfer to a more convenient location, and failed to credibly demonstrate that he made a good faith effort to secure affordable housing in the area of his employment, the Board did not err by concluding that Claimant lacked cause of a necessitous and compelling nature to terminate his employment. *See Rose*; *Day*. Substantial evidence in the form of Claimant's own testimony and that of Employer's District Merchandising Service Manager, Brian Seymour, support the Referee's conclusions, which the Board adopted.

9

To the extent Claimant specifically challenges the sufficiency of the Board's Finding of Fact No. 9, that Claimant's two-week notice to Employer was generic and did not touch upon Claimant's health concerns or the condition of his then-residence, we observe that this finding of fact was supported by Claimant's own testimony that the only reason he provided Employer for his resignation was his impending relocation and by Seymour's testimony that the two-week notification was generic. *See* N.T. at 6, 9 & 12; C.R. at 16, 19 & 22.

Additionally, regarding Claimant's argument that the Referee capriciously disregarded evidence regarding his efforts to find affordable housing near his employment, we note that

> to accord greater credibility to one witness'[s] testimony than to that presented by others is simply a manifestation of the Board's fact-finding role and does not constitute a capricious disregard of evidence. Similarly, the express consideration and rejection of evidence, by definition, is not capricious disregard of that evidence.

*MacFann v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 2185 C.D. 2012, filed July 12, 2013), slip op. at 6 (internal citations, brackets, and quotation marks omitted). Here, the Referee expressly found Claimant's testimony on the matter to not be credible, and the Board adopted that finding. *See* Referee's Decision at 3; C.R. at 28; *see also* Board Order; C.R. at 33. Claimant's disagreement with the Board's execution of its basic fact-finding function does not convert that fact-finding to a capricious disregard of evidence. *See MacFann*, slip op. at 6.

For these reasons, we affirm the Board Order affirming the Referee's Decision and determining that Claimant was ineligible for UC benefits under Section 402(b) of the Law.

10

## B. Due Process Claim

Regarding Claimant's claim that the Referee deprived him of due process, we acknowledge that Section 101.21(a) of the Board's regulations provides that, "[w]here a party is not represented by counsel[,] the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties." 34 Pa. Code § 101.21(a). Thus,

> [w]e have held that due process requires that the referee advise an uncounseled claimant of [his] right to be represented by counsel, to cross-examine adverse witnesses, and to offer witnesses in [his] own behalf. Where a claimant appears before a referee unrepresented by counsel, the referee must be more than usually cautious to insure that all relevant issues are examined and that all parties have an opportunity to fully present their case. Administrative regulations also require the referee to render to an uncounseled claimant every assistance compat[i]ble with the impartial discharge of the referee's duties[.]

*Brennan v. Com., Unemployment Comp. Bd. of Rev.*, 487 A.2d 73, 77 (Pa. Cmwlth. 1985) (internal citations and footnote omitted).

Contrary to Claimant's suggestion, however, the Board's regulations do not oblige UC referees to prosecute a case on a *pro se* claimant's behalf. As this Court has explained:

> 34 Pa. Code § 101.21(a) only requires that the referee assist an uncounseled claimant in a manner *consistent with the impartial exercise of his duties.* The referee is not required to become, and should not assume the role of, a claimant's advocate. The referee need not advise an uncounseled claimant on specific evidentiary questions or

11

points of law; nor need the referee show any greater deference to an uncounseled claimant than that afforded a claimant with an attorney.

*Brennan*, 487 A.2d at 77-78 (internal citations omitted; emphasis in original). Accordingly, this Court has determined that the due process requirements of 34 Pa. Code § 101.21(a) are satisfied where a referee specifically advises a claimant at the beginning of the hearing as to the claimant's right to counsel, and to present witnesses, and cross-examine adverse witnesses, and where the transcript of the hearing illustrates that the referee actively assisted the claimant in presenting his testimony and rebutting evidence presented by the employer. *See id.* at 77.

Here, at the beginning of the hearing, the Referee advised the parties as follows:

> I am required to advise both parties of their rights. Under Pennsylvania Unemployment [Compensation] Law, you do have the right to be represented by an attorney or an advisor of your choice. You have the right to present testimony, evidence, and witnesses on your behalf. You have the right to question your witnesses, as well as the right to question witnesses of the opposing party. You have the right to offer rebuttal testimony and the right to make a closing statement. These rights were explained in the Notice of Hearing.

N.T. 3; C.R. at 13. Both Claimant and Employer acknowledged these rights to the Referee. *See id.* Further, before taking evidence, the Referee explained the issues, the burden of proof, and the entire hearing and decision process to both parties, neither of which had any questions.[8] *See* N.T. at 3-4; C.R. at 13-14. Prior to the

---

[8] The Referee expressly explained to the parties:

testimony, both parties confirmed that they had received and had the opportunity to review the documents that the Referee made part of the record,[9] and neither party

> At issue before me today, Section 402(b), whether Claimant's unemployment was due to voluntarily leaving work without cause of a necessitous and compelling nature. The burden of proof rests with [] Claimant under that section of law. . . The hearing will proceed as follows. I'll identify the documents in the file for the record. I'll admit them into the record subject to either party's legal objections. I'll, then, take testimony from both sides, beginning with [] Claimant. Following each witness's testimony, the opposing [party] will be able to question on that testimony. I will, then, offer each party the chance to offer rebuttal testimony. Following testimony, I will give each party the chance to make a closing statement. I'll, then, close the record and then have a Decision issued to all parties through the mail.

N.T. at 4; C.R. at 14.

[9] The Referee identified and admitted the following documents into the record without objection:

> Referee 1, a report of phone calls between [] Claimant and the Referee clerks. Referee 2, an email from [] Employer Representative providing [] Employer's contact information for today's hearing. Referee 3, Notice of Hearing. Service Center 1, Certification of documents. 2, Petition for Appeal document completed by the Service Center. 3, Petition for Appeal document. 4 appears to be a copy of an envelope. 5, Notice of Determination. The Determination is: [] Claimant is ineligible for benefits under Section 402(b) of the Pennsylvania Unemployment Compensation Law beginning with compensable week ending March 28, 2020. 6 is the second page of that Determination. 7, Notice of Determination, Overpayment of Benefits Fault or Non-Fault. . . . 8, 9, and 10, Internet Initial Claims documents. 11, Employer cover letter. 12, Employer Questionnaire document. 13 appears to be an email between the Employer Representative and the Department. 14, 15, and 16 appear to be Employer Questionnaire documents. 17, UC Overpayment Classification Worksheet document. 18, Check Writing document provided by the Service Center. 19, UC Service

13

objected to the admission of those documents into the record. *See* N.T. at 5; C.R. at 15. Additionally, the Referee helped Claimant to testify to the salient and necessary facts concerning: (1) whether Claimant requested a transfer to a location closer to his new address before quitting; (2) his underlying health and financial concerns/reasons for separating from Employer; and (3) Claimant's pre-relocation efforts to locate affordable housing near to his work location. *See* N.T. 7-9; C.R. at 17-19. Viewed together as a whole, the Referee's efforts illustrate compliance with 34 Pa. Code § 101.21(a) and satisfaction of due process requirements. For these reasons, Claimant's due process claim affords him no relief.[10]

---

> Center Employer Maintenance Screen Printout. 20 and 21, Claim Record documents provided by the Service Center. 22 appears to be a copy of an envelope. And 23 through 58 appear to be additional documents submitted by [] Claimant for today's hearing.

N.T. at 4-5; C.R. at 14-15. We observe that, because Claimant did not serve the Board when he filed his appeal to this Court, pursuant to its document retention policy, the Department purged the documentation from the Referee's hearing. *See* Board's Br. at 2 n.1. The Court was able to determine this matter even without these documents, however, based on its review of the written hearing transcript, which the Board was able to recreate.

[10] To the extent Claimant argues that the Referee failed to adequately help him further develop the record at the hearing by eliciting certain specific information that Claimant argues would have aided his cause – to wit, elaborating on Claimant's financial difficulties by discussing housing prices in the area of his employment, *see* Claimant's Br. at 30; further elaborating on the process whereby employees seek transfers with Employer's locations, *see* Claimant's Br. at 34-37; and discussing alleged difficulties to finding employment occasioned by the COVID pandemic, *see* Claimant's Br. at 36-27, 39 – we observe that the Referee fulfilled his obligations under 34 Pa. Code § 101.21(a) as discussed *supra*, and that the type of guidance to which Claimant claims he was entitled would have amounted to the Referee prosecuting Claimant's case on his behalf, which the Referee may not do. *See Brennan*, 487 A.2d at 77-78. Had Claimant wanted such detailed guidance with the prosecution of his case, he was welcome to have hired an attorney to represent him at the hearing, as he was advised by the Referee. *See* N.T. 3; C.R. at 13. However, after acknowledging his right to representation, Claimant confirmed his desire to proceed with the hearing without securing legal counsel. *See id.*

## IV. Conclusion

For the foregoing reasons, we affirm the Board Order.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason S. Roberts,     :
     Petitioner  :
          :
  v.       :
          :
Unemployment Compensation :
Board of Review,     :  No. 851 C.D. 2020
     Respondent :

# **O R D E R**


AND NOW, this 20th day of May, 2024, the August 5, 2020 order of the Unemployment Compensation Board of Review is AFFIRMED.


             _____

             CHRISTINE FIZZANO CANNON, Judge